# Louisville & Nashville Railroad Company v. Condor's Administrator.

(Decided July 1, 1924.)

## Appeal from Boyle Circuit Court.

1.  Railroads—Evidence Held Not to Support Allegation as to Discovery of Danger by Train Crew.—Evidence held not to support allegation that plaintiff's buggy and horse were at a place where train crew should have discovered that unnecessary noise on approaching crossing would frighten a horse, where a building was between buggy and approaching train.

2.  Railroads—Court Cannot Speculate as to Intent of Buggy Driver to Use Crossing.—Where there was not a scintilla of evidence tending to support allegation that buggy driver intended to use crossing, the court cannot speculate as to his intention.

3.  Railroads—Injury to Driver of Horse Not in Sight of Train Crew Frightened by Noise Held Not Actionable.—As to persons on highways not using crossings, only duty resting upon a railroad as regards signals and noise is that of preventing injury after discovering presence and peril, and railroad was not liable for death of buggy driver whose horse was frightened by unnecessary whistling and noise, after failure to sound whistle for crossing where train crew could not see him because of intervening building.

WOODWARD & WARFIELD and JOHN W. RAWLINGS for appellant.

PURYEAR & CLAY for appellee.

OPINION OF THE COURT BY JUDGE O'NEAL—Reversing.

This is an appeal by the defendant, the Louisville & Nashville Railroad Company, from a judgment against it for $5,000 in favor of the administrator of the estate of John M. Condor, deceased, whose death is alleged to have been caused by the defendant's negligently frightening the horse he was driving in Junction City on April 2, 1921. The refusal of the trial court to direct a verdict for the defendant is the chief ground urged for a reversal and is the only ground we think it necessary to consider upon this appeal.

The sole question to be determined is the degree of duty, if any, the defendant owed plaintiff's intestate. Condor, at the time and place where he was killed and under the existing circumstances as shown by plaintiff's own witnesses.

The defendant's railroad tracks run through Junction City from east to west; the highway on which Con-

dor was driving runs north and south and crosses the railroad at right angles. Shortly before the accident Condor, coming from the north in a buggy drawn by a horse, was driving toward the crossing, but whether or not he intended passing over it is not disclosed by the evidence. The record does not contain even a suggestion as to his destination; there was not a question asked concerning the matter; there is not a scintilla of evidence upon the subject and there is no basis for the assumption that he intended using the crossing. At a point approximately one hundred feet north of the railroad Condor met two wagons coming from the south. They had just passed over the crossing when he met them. The first was driven by his brother-in-law and the other, which followed immediately behind the first, by his nephew. Upon thus meeting, all three vehicles stopped, with Condor's buggy and the rear wagon standing side by side. His brother-in-law got off his wagon and stood by the side of Condor, and the two proceeded to engage in a conversation which continued up until the happening of the accident, a period of some four or five minutes, and was only stopped by the occurrence of the accident. From the point where they were conversing, which was about one hundred feet from the crossing, it was impossible for them to see a train approaching from the west or for those operating such train to see them. This resulted from the fact that there was a factory building fronting on the west side of the highway and extending from beyond where they were located down to within some 17 feet of the railroad. While Condor and his brother-in-law were thus engaged in conversation an engine of the defendant's coming from the west at 35 or 40 miles an hour, and without any signal of its approach, suddenly ran out from behind this building and over the crossing. Just before or as it reached the crossing it blew its whistle and in passing over the crossing it unnecessarily emitted a large amount of steam and made an unusual and unnecessary amount of noise. This so frightened Condor's horse that it darted forward, swerved and threw him from the buggy, inflicting injuries upon him from which he shortly thereafter died.

From the foregoing statement of facts it is apparent that plaintiff's allegation that Condor's presence and peril were discovered by the defendant in time to have prevented injuring him is both wholly unsupported and conclusively disproved by the testimony of the wit-

nesses and by the physical facts themselves. The evidence shows that the building in front of which Condor stopped rendered it physically impossible for those in charge of the engine to have seen him any more than he could have seen them until the engine reached the crossing, and it was then, of course, too late for them to have prevented the accident even if they then saw him, a circumstance concerning which there is no testimony in the record.

Nor is there a scintilla of evidence tending to support the allegation that Condor expected or intended to use the crossing. Whether he so intended or not is at most a matter of conjecture. It is obvious that he did not stop on approaching the crossing, either for the purpose of looking and listening or to permit the engine to pass. At that time it was from three to five miles distant, if traveling at the rate testified to by plaintiff's witnesses. Moreover, if he stopped to let it pass he necessarily knew of its approach, and in that event plaintiff cannot consistently complain of its failure to signal a warning thereof. But we cannot speculate as to what a man's intentions may have been, especially when, as in the present case, there is an entire absence of a foundation in fact for such speculation. The evidence proves beyond question that Condor stopped for but one purpose and that was to engage in conversation with his brother-in-law. How long that conversation would have continued but for the accident and whether he would have returned from whence he came, or have left the highway before reaching the crossing or have actually used the crossing, no one undertakes to or can say. So that whatever may have been his reason for stopping and whatever may have been his intention as to using the crossing, the controlling fact remains that at the time of the accident he was neither approaching nor attempting to approach it but had stopped approximately one hundred feet from it. It follows, therefore, that the defendant owed him only such duty as it owed any other member of the public upon the highway who was not at or on or just over the crossing, and however negligent the defendant may have been in the operation of its engine it is not liable to the plaintiff unless its negligence consisted in the violation of a duty which it owed the plaintiff's decedent.

The petition charges the following negligent acts which it is claimed are violations of the duty the defendant owed the decedent. It is alleged that the engine

failed to signal its approach to the crossing, that it blew its whistle upon or immediately before reaching the crossing, that it made unusually loud and unnecessary noises thereon, that it emitted an unnecessarily large amount of steam and that it was operated at an excessive rate of speed. It is further alleged that the defendant knew that the crossing, together with its tracks on both sides thereof, were in a populous community and much used at all times by many people.

Conceding the allegations to be true and that the negligence therein specified is supported by the evidence, they yet wholly fail to charge the defendant with a breach of any duty it owed the decedent in view of the fact that it is conclusively shown that he was neither using, nor approaching nor even near the crossing.

He therefore occupied toward the defendant exactly the same status as that occupied by a traveler upon a highway parallel to its tracks and in the vicinity of a public crossing but which he was not intending to use. We have held in numerous cases that under such circumstances the only duty resting upon the railroad is that of preventing the injury after discovering the presence and peril of the person upon the highway. Since in the case at bar the decedent was not at, on or near the crossing, and since his presence and peril were not and, in fact, could not have been discovered by the defendant in time to have prevented injuring him, it necessarily follows that the defendant was not guilty of any negligence as to him, and its motion for a directed verdict should have been sustained.

Wherefore, the judgment is reversed.